UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

PAUL BLACK,                                          Civil Action No.
                                                     09-2271 (JS)
                              Plaintiff,

         -against-

JEFFREY S. SCHWARTZ and LAW OFFICE
OF JEFFREY S. SCHWARTZ,

                              Defendants.

--------------------------------------------------------X


**<u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS
JEFFREY S. SCHWARTZ' AND LAW OFFICE OF JEFFREY S. SCHWARTZ'S
MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................i

TABLE OF EXHIBITS...............................................................ii

I.     PRELIMINARY STATEMENT.................................................1

II.    STATEMENT OF FACTS/PROCEDURAL HISTORY......................2

III.   ARGUMENTS.................................................................3

    A.   DEFENDANTS NEGLIGENTLY COMMENCED AN ACTION AGAINST THE WRONG PARTY IN THE WRONG STATE..................................3

    B.   DEFENDANTS NEGLIGENTLY FAILED TO SERVE DISCOVERY DEMANDS...................................................................6

    C.   DEFENDANTS NEGLIGENTLY FAILED TO NOTIFY PLAINTIFF OF OR TO PRODUCE PLAINTIFF FOR DEPOSITION.....................................7

    D.   DEFENDANT NEGLIGENTLY CAUSED BLACK TO SIGN BLANK VERIFICATIONS, TO HIS DETRIMENT.................................................9

    E.   DEFENDANTS FAILED TO VOLUNTARILY DISMISS THE ACTION AGAINST LAFG WHEN PRESENTED WITH FACTS THAT THE ACTION LACKED MERIT...........................................................14

    F.   DEFENDANTS FAILED TO NOTIFY BLACK OF THE FILING OF THE MOTION FOR ATTORNEYS FEES AGAINST BLACK AND SCHWARTZ AND OF THE INHERENT CONFLICT OF INTEREST...........................15

    G.   THE SPIRALING DISCOVERY ABUSES.....................................17

IV.    ATTORNEY'S FEES ARE RECOVERABLE.........................................19

V.     PROXIMATE CAUSE EXISTS....................................................21

VI.    CONCLUSION.................................................................24

**TABLE OF AUTHORITIES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)...................................................2

Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574 (1986)........................................2

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).............................................................2

Matter of Nichols v. Keller, 15 Cal.App4th 1672 (1993).................................................3

Matter of Drociak v. State Bar of California,
52 Cal.3d 1085, 278 Cal.Rptr. 86 (1991).................................................................13

Deyo v. Kilbourne, (1978) 84 Cal.App.3d 771, 779-783, 149 Cal.Rptr. 499.............13

Chambers v. NASCO, 501 U.S. 32, 45-6 (1991)...............................................................19

Jocer Enterprises v. Price, Ropers, Majeski & Brently,
183 Cal App 4th 559, 107 Cal Rptr 3d 539 (2010).........................................................19

Charnay v. Cobert (2006) 145 Cal.App.4th 170, 179, 51 Cal.Rptr.3d 471...................21

Laird v. Blacker (1992)2 Cal.4th 606, 611, 7 Cal.Rptr.2d 550, 828 P.2d 691..............21

Kurinij v. Hann & Morton, 55 Cal.App.4th 853, 64 Cl.Rptr.2d 324 (1997)....................21

Slovensky v. Friedman, 142 Cal.App.4th 151849 Cal.Rptr.3d 60..............................21

Slovensky v. Friedman, 142 Cal.App.4th 151849 Cal.Rptr.3d 60..............................21

Lombardo v. Huysentruyt, 91 CalApp4th 656, 110 CalRptr2d 691 (2001)................22

California State Automobile Association inter-Insurance Bureau, v. Parichan, 84 Cal.
App.4th 702, 101 Cal.Rptr.2d 72........................................................................23

i.

TABLE OF EXHIBITS

Exhibit "A":    Deposition Transcript of Paul Black;

Exhibit "B":    Declaration of Paul Black;

Exhibit "C":    Deposition Transcript of Matthew Argue;

Exhibit "D":    October 19, 2006 correspondence of Garrett & Tully;

Exhibit "E":    Correspondence of Garrett & Tully and Schwartz0

## I.      PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of PAUL BLACK (the "Plaintiff" or "Black") in opposition to defendants JEFFREY S. SCHWARTZ, ESQ. (the "Defendant" or "Schwartz") and LAW OFFICE OF JEFFREY S. SCHWARTZ'S (together, the "Defendants") Motion for Summary Judgment.  It is respectfully submitted that Defendants have failed to meet their burden to make a prima facie showing of entitlement to summary judgment.  The case at bar presents triable issues of fact and law sufficient to withstand such a motion.  Further, it is respectfully submitted that Defendants have misstated the underlying facts of the case at bar, as well as, misquoted and misapplied the cases they have cited in their Memorandum and Points of Law filed with this court on October 3, 2011. Defendants' claim that Plaintiff cannot sue Defendant for legal malpractice to recover attorney's fees assessed against Black personally, is also an incorrect interpretation of the applicable case law.  Lastly, Defendants' claim that there is no proximate cause between Defendant' negligent representation of Black and the damage caused to Plaintiff in being personally assessed attorney's fees is equally misplaced.

It is Plaintiff's claim that Schwartz's negligent commencement of a recklessly brought and frivolous lawsuit against the wrong party, Land America Financial Group (LAFG) in the wrong state (California); continuation of that recklessly brought and frivolous lawsuit; failure to conduct any meaningful discovery in the actionnegligent service of discovery documents which were not properly reviewed, discussed and verified; the failure to discontinue the action when presented with evidence that LAFG was the wrong party; failure to advise Black of a conflict of interest; and the myriad of discovery abuses as where detailed in the March 2007 of Judge Otero, wherein attorneys fees were assessed against Black, were the proximate cause of the damages

1

sustained by Black, i.e., the imposition of attorneys fees in the amount of $110,502, against Black.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY IN THE UNDERLYING CASE

For the sake of brevity, plaintiff will adopt the basic tenets of the Defendants' statement of facts and procedural history in the underlying action.

## III.   ARGUMENTS

In order to make a prima facie showing of entitlement to judgment as a matter of law, defendant is required to establish, under Rule 56(c) of the Federal Rules of Civil Procedure, that there is no genuine issue as to any material fact, after considering the pleadings and any depositions, answers to interrogatories, admissions, or affidavits.   The Supreme Court has explained this standard in several cases. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

Whether a fact is "material" depends on the substantive law at issue in the case.  A "genuine issue" of material fact means that there is sufficient evidence in favor of the non-moving party to allow a jury to return a verdict in its favor. Celotex Corp., supra at 481.  Any inferences from the underlying facts must be viewed in light most favorable to the non-moving party. Celotex Corp., supra at 490.   In the matter at bar, the Defendants clearly fail to meet these standards to make a prima facie showing of entitlement for a summary judgment to dismiss Plaintiff's claims herein as a matter of fact and law.  As will be shown below, the Defendants committed professional negligence (legal malpractice) in their representation of Black, resulting in March of 2007 of an award of attorneys fees to LAFG in the amount of $110,502 imposed against Black personally.   Black paid the judgment in the amount of $119,000 in 2009.

2

As will be demonstrated below, Defendants committed professional negligence (legal malpractice) in their representation of Black in the underlying California litigation, which were the proximate cause of the damages sustained by Black in the amount of $119,000.00.  Plaintiff will demonstrate that this imposition of attorneys' fees against Black personally was as a direct result of the negligence (legal malpractice) of the within Defendants in their representation of the Plaintiff.

## A.   DEFENDANTS NEGLIGENTLY COMMENCED AN ACTION AGAINST THE WRONG PARTY IN THE WRONG STATE

The first departure of the Defendants is memorialized in the decision of the Honorable S. James Otero ("Otero"), wherein Otero concluded that the suit was "recklessly brought and frivolous" (Deft. Exhibit "K", p.3).  Defendants' initial act of negligence was to commence suit against the wrong party, LAFG, in the wrong state, that of California.   This fact was demonstrated in the California District Court's granting LAFG a summary judgment dismissing all claims against them because LAFG was not a party to the PDW Agreement nor the Home Purchase Agreements, had nothing to do with any of these agreements and never should have been sued by Plaintiff at the outset (Deft. Exhibit "J").  In addition, Judge Otero held in his subsequent decision awarding attorneys fees against Black (Deft. Exhibit "K", p.5) that "Black ought to have considered very carefully whether LAFG was a proper party to sue under this agreement.  Thus the case was recklessly filed".

In the Matter of Nichols v. Keller, 15 Cal.App4th 1672 (1993), the Court, in discussing the issue of legal malpractice, addressed the rather axiomatic, yet somewhat forgotten, responsibility of the attorney in stating the following:

> "Liability can exist because the attorney failed to provide advice.  Not only should an attorney furnish advice when requested, but he or she should also volunteer opinions when necessary to further the client's objectives.  The attorney need not advise and

3

caution of every possible alternative, but only of those that may result in adverse consequences if not considered".

In the case at bar, Defendant Schwartz himself decided to bring suit against LAFG. Schwartz further failed to advise the Plaintiff that there was no case against LAFG and of the potential consequences of commencing a frivolous action against the wrong party.  Otero states in his December 2006 decision dismissing the case against LAFG (Deft. Exhibit "J", p.9):

> "Black has a fatal defect in his case against LAFG. This defect is that LAFG is not the escrow company in the transaction. LAFG is the grandfather company of LTN, which is the escrow company in the transaction. There is no evidence of any wrongdoing by LAFG, other than a few instances where Black uses the two names interchangeably."

With regard to the improper commencement of this action, (See Deft. Exhibit "K", p. 3), Otero further states

> "Although Black had at all times been in possession of the documents governing the real estate transaction, and a reading of these documents would show that no claim would stand against LAFG, the lawsuit was nevertheless brought. Fundamentally, it appears that the suit was filed in the absence of any substantive investigation of the claim against LAFG"

This issue then turns on the party responsible for commencing the "recklessly brought and frivolous lawsuit". It is plaintiff's claim that not only was Schwartz in possession of all of the relevant documentation necessary to ascertain who the proper parties to the litigation were, but that despite this possession, Schwartz negligently decided himself to commence the lawsuit against LAFG.  Black, when asked if there came a time he was required to turn certain documents over to the other side, testified as follows (Exhibit "A", p. 78):

A.      Yes, and Mr. Schwartz was already in possession of all the documents that I had.
Q.      That was from the get-go?
A.      Right.

See also Exhibit "A", p. 79, wherein Black testified that any time he requested a particular document that was not in his possession, he would accommodate that request immediately.

4

This testimony must, of course, be seen in contrast with Schwartz' rather equivocal testimony, that he could not recall whether or not he had all of the relevant documentation in his possession prior to instituting the lawsuit (Defts. Exhibit "C", p.86).

Plaintiff's testimony also reveals that Schwartz was unambiguously the driving force behind the commencement of this litigation.  Plaintiff testified (Exhibit "A", p.75) as follows:

Q.     Starting from the beginning, what did he [Schwartz] say the strategy would be?
A.     Would be – he said "I don't think that we should just sue Pulte Del Webb." He said "I want to sue Pulte Del Webb, Realty Mortgage, and LandAmerica Lawyers' Title."

Schwartz additionally testified as to his sense of bewilderment when he found out that the judge (Otero) had determined that two of the three lawsuits belonged in Nevada and not California.  See Exhibit "A", p. 92:

A.     . . . , and I question Jeffrey "Why did you" - - again, not being a lawyer, I started to think about it common sense-wise, and I said "Why did you sue a Nevada company whose issue with me pertained to a Nevada property, why didn't you sue in Nevada"?

See also Exhibit "A", p.93"

A.     . . ., You know, you don't tell a brain surgeon how to operate on your brain, you listen to what he says, and in this case, my brain surgeon was Jeffrey Schwartz.

Black, went on to testify (Exhibit "A", p.94) that he felt Pulte Del Webb was the party who did not perform on their agreement with him and how it didn't make sense that LandAmerica should be brought it.  Black further testified that although he did not know that Schwartz had moved to dismiss the case against LAFG, he would not have objected. Specifically he testified (Exhibit "A", p.95): "I just wanted him to focus on the Del Webb case - - they're the ones that did the damage, they're the ones that owed me the money.  Was [sic] Jeff's plan of action to create – sue the nation instead of the state".

Most significant in this regard, Plaintiff's expert attorney, Peter Gordon testified at his deposition that it was a departure to bring LAFG into the lawsuit (Deft. Exhibit "M", p. 94).

5

Defense counsel is mistaken in his recitation (Memorandum of Law, p. 16) that Mr. Gordon testified that bringing the case was not negligent. To clarify, Mr. Gordon testified had Schwartz named LTN in the lawsuit, it would not have been negligent (Deft. Exhibit "M", p.84. However, the lawsuit was not commenced against LTN, but rather LAFG (Deft. Exhibit "M", p. 79).

With regard to testimony of Matthew Argue, expert for Schwartz, Mr. Argue testified that it was clear, on the contracts that ordered an arbitration agreement, that LAFG was not a party to the arbitration clause and that Schwartz was in possession of those documents when he filed suit against LAFG (Exhibit "C", p.152). Mr. Argue further testified that it was not necessarily a deviation from the standard of care for Schwartz to have filed the lawsuit and not include LTN if Schwartz thought LAFG was responsible for their actions (Exhibit "C", p. 79). However, he further testified that in the event that LAFG was not responsible for the actions of LTN, it would have been an error on the part of Schwartz not to include LTN in the lawsuit. (Exhibit "C", pp. 79-80).

## B.   DEFENDANTS NEGLIGENTLY FAILED TO SERVE DISCOVERY DEMANDS

It is further Plaintiff's contention that had Schwartz served even the most rudimentary discovery demands on LAFG, responses to such demands would more than likely have led Schwartz to discovery that he had sued the wrong party. Pursuant to Schwartz' own testimony (Deft. Exhibit "C", pp. 101-102) and the testimony of Mr. Argue (Exhibit "C", pp. 84-85), Schwartz never served interrogatories on LAFG's affirmative defenses, notices to take deposition, or any notices for production of documents on LAFG.

According to the testimony of defense expert, Mr. Argue (Exhibit "C", p.85),  it would have been within the good standard of legal practice for Schwartz to serve these various

6

discovery demands. Clearly, once Judge Otero dismissed the PDW defendants from the action, pursuant to the 12(b)(6) motion (Deft. Exhibit "C"), leaving only LAFG in the California action, it was incumbent upon Schwartz to utilize all discovery devices to prove or even sustain his tenuous claim against LAFG.

According to Defendants; own expert, Mr. Argue, it was quite possible that had Schwartz served discovery responses on LAFG, the exact discovery that surfaced after the motion for summary judgment was made by LAFG, i.e., an insurance agreement, and caused the action to be dismissed, may possibly have been available during the discovery stages of the lawsuit (Exhibit "C", p. 130) at the early stages of the litigation, thus timely stopping the litigation in its tracks. More significantly, the March 2007 decision of Otero (Deft. Exhibit "K", p.6), in discussing the second discovery abuse by plaintiff, states:

> "Second, Black failed to conduct any discovery of its own. LAFG has represented that Black failed to conduct any discovery of LAFG. (Reply at 2 n.3.) Black also did not appear at depositions of witnesses from Defendant Del Webb and Defendant Pulte Mortgage. (Mot. At 7) Not conducting discovery suggests that Black was uninterested in reaching the merits of the case, and hoped to settle irrespective of the merits".

This failure to serve discovery responses was deemed to be a departure, pursuant to the report of Mr. Gordon, dated January 27, 2011 (Deft. Exhibit "O", p.2). Unfortunately, this event was to form one of the underlying bases for, or the "cumulative effect" (Deft. Exhibit "K") of the imposition of sanctions against Black.

## C. DEFENDANTS NEGLIGENTLY FAILED TO NOTIFY PLAINTIFF OF OR TO PRODUCE PLAINTIFF FOR DEPOSITION.

Testimony of Schwartz (Deft. Exhibit "C", p. 140) revealed that on October 5, 2006, he retained an attorney in California, Ivan Shomer, to appear on his behalf on a motion brought by Defendant LAFG to obtain discovery from Black, as well as for sanctions against Schwartz and Black for discovery abuses. The result of such hearing was that the court granted sanctions

against plaintiff and Schwartz in the sum of $1,500.00 to be paid by October 12, 2006.  At this juncture, pursuant to the correspondence of Garrett and Tully, dated October 19, 2006, the cut-off date for discovery was October 23, 2006 (Exhibit "E").

Following this hearing, counsel for LAFG noticed Schwartz for Black's deposition on October 18, 2006.  Since Black would be out of town that day, the deposition was re-scheduled to October 23, 2006, based on an agreement between Schwartz and defense counsel, Ryan Squire (Exhibit "E").  Thereafter, by correspondence, dated October 18, 2006, Schwartz denied the existence of any such agreement and advised defense counsel that their notice did not comply with the FRCP, local rules of the USDC of Central District of California (Exhibit "E"). Subsequent correspondence of Schwartz reveal that he would not be producing Black on October 23, 2006 (Exhibit "E").  The March 2007 decision of Otero (Deft. Exhibit "K", p. 5) discusses this particular discovery abuse as follows:

> "Extracting Black's deposition was a grueling process for LAFG.   When LAFG requested the deposition of black, allegedly Black did not respond. Id at 18. LAFG then noticed the deposition for October 18, 2006, to which Black responded that he would be out of town. Id.  At LAFG's acquiescence, Black scheduled the deposition for October 23, 2006, the discovery cut-off date. Id.  Black then failed to show up to the deposition and then, incredibly, taunted LAFG, saying that because the discovery period had ended, there was nothing LAFG could do to secure Black's deposition."

In furtherance of this issue, plaintiff's testimony is quite congruent with Otero's recitation of the events. Black's testimony reveals that he was never notified of the adjournment of his deposition to October 23, 2006 and, further, that Schwartz was rather pleased with the results of his endeavors in preventing LAFG from secure the Black's deposition by October 23, 2006.  Black testified that he recalled a time when he was expected to be deposed around his birthday week in 2006 (Black's date of birth is October 18, 1956), but it never happened. Pursuant to Black's testimony (Exhibit "A", p. 88), he remembers Schwartz calling him that he

had great news.  Specifically, he advised Black that the defendant's time to depose him had expired, the defendants blew it, and so Schwartz would not be producing him.  Black testified, "I made myself available for anything Jeff needed, including mediations, trips to Vegas to talk to LandAmerica.  Why wouldn't I go to downtown Los Angeles, twenty minutes from my house . .? (Exhibit "A", p.88).  Black was never advised that the date set for his deposition was during the week of October 19, 2009 (Exhibit "A", p. 97).

Defense expert, Mr. Argue, when deposed, was unable to testify with regard to the existence of any correspondence, e-mail or memo from Schwartz to Black indicating that Black needed to show up for his deposition on October 23, 2006 and that if he did not, there would be grave consequences (Exhibit "E ", pp. 106, 109, 110).  Nor could Mr. Argue locate any documentation to indicate that Black had refused to show up for his deposition (Exhibit "E ", p. 106).  Mr. Argue did, however, conclude that Schwartz had an ethical obligation to inform Black of his scheduled deposition (Exhibit "E ", p. 110).  Clearly, Schwartz neither advised Black of his obligation to appear for his deposition, nor directed Black to appear for his deposition.

It is the opinion of plaintiff's expert, Mr. Gordon (Deft. Exhibit " M" , pp. 98-99), that it was the negligence on the part of Schwartz in failing to notify Black of his scheduled deposition in writing, and of his requirement to appear, when there had been a history of repeated adjournments and there now existed another Court order for the holding of that deposition. Schwartz, placed Black in a compromising position, over which Black could exert no control. Similarly, this departure is yet another one of the bases, cumulatively or otherwise, for the imposition of attorneys' fees against Black.

**D.    DEFENDANT NEGLIGENTLY CAUSED BLACK TO SIGN BLANK VERIFICATIONS, TO HIS DETRIMENT**

With respect to the proximate cause issue, Defendants primarily contend that Plaintiff

prepared an answer to a request to admit which provided false information or misrepresentations that were subsequently proven to be true on summary judgment and which resulted in the subsequent sanction of attorney's fees against Black.  Schwartz contends that Black inaccurately provided substantive answers which he merely formalized when responding to a request for admission (Deft. Exhibits "C" and "E", Schwartz Declaration).  However, it is Black's contention (Exhibit s "A", and "B") that it was Schwartz himself who prepared the response to the request for admissions and that such document was submitted to LAFG without review by Plaintiff.

The bases for Judge Otero assessing sanctions personally against Black was Otero's conclusion (Deft. Exhibit "K", pp. 6, 8-9) that Black had failed to admit the truth of matters (Deft. Exhibit "F") which were subsequently deemed to be true.  It is Plaintiff's claim, that Defendant Schwartz never discussed, read or sent such Request for Admissions or the responses thereto to Black.  Rather, Schwartz sent an impromptu blank verification to Black and requested he immediately sign it in order to meet a deadline.  Black trusted the skill and expertise of Schwartz and signed the blank verification, assuming that the responses accompanying the verification would be truthful, accurate and prepared in a professional manner (Exhibit "B").  Schwartz placed Black in a legally and ethically compromising position.

This procedure of Schwartz' with respect to requesting bland verifications be signed in order to meet an impending deadline is supported by Plaintiff's deposition and Declaration.  When presented by defense counsel with certain discovery documents, Black testified that he had no recollection of seeing the Response to LAFG's Demand for Interrogatories (Exhibit "A" p. 84; Exhibit "B"; Black Declaration) or Response to Production of Documents (Exhibit "A", p. 81;), both of which bear his signed verification.  Black has further declared that he has no

recollection of receiving, reading, or even discussing the Response to the Request for Admission with Schwartz (Exhibit "B").  Black's Declaration indicates that he was in certain instances put in the compromising position of having to sign blank verifications, at the Defendants' request, right before the expiration of a deadline.  Schwartz did not always provide him with a copy of the document to which the verification pertained.  Confident that he had provided Schwartz with all of the relevant documentation and information, Black would sign and return the verifications, readily assuming, to his detriment, that such responses or documents that were to accompany the verifications were prepared in an accurate, truthful and professional manner.  Black completely relied on the expertise and skills of Mr. Schwartz and trusted his advice, counsel, and judgment with respect to his legal work in the lawsuit.  Black's version of events is in total contradiction to the Declaration of Schwartz, who declares that the responses to the interrogatories and request for admissions were prepared and submitted to Mr. Black after discussing them with Black (Exhibit "C").

Defendants' expert, Mr. Argue is incorrect in his testimony (Exhibit "C", pp. 96, 169), when he mistakenly concludes that Black's deposition says that Black received and read certain interrogatories (Deft. Exhibit "F").  This is significant only because the Interrogatories were dated the same date, October 16, 2006, as the Request for Admissions (Deft. Exhibit "F") and the Court should not be misled to believe that Black was sent any of the documents dated October 16, 2006, before signing a verification.  When asked if Black recognized the interrogatories, he stated:  "I don't recognize the document itself, no" (Exhibit "A", p. 84).  Further, when asked if Black remembers being asked to look at and sign off on the Interrogatory, he replied "No".  Black's testimony is, again, further supported by his Declaration (Exhibit "B").

11

In addition, when questioned if the Response to Production of Documents (Deft. Exhibit "K") would be something Black would have reviewed, Black testified that he did not recognize that document (Exhibit "A", p. 81). When further asked if it was his custom and practice to review the document before it, or just sign the verification page, or something else, he testified that it could have gone either way (Exhibit "A", p. 83). Black prefaced this response as follows (Exhibit "A", p.82) :

> "Well, customarily, unfortunately with my experience with Mr. Schwartz, was he wasn't readily available, continuously impossible to reach, terrible at returning phone calls, could take a month to get a call back from him. This was the experience that I learned over time, and then out of the blue I might get a call - - "I need you to sign this right away."

Perhaps, most noteworthy, and even more compelling, is the fact that Defendants have proffered no evidence whatsoever in the form of correspondence, e-mail, memorandum confirming a telephone conversation, or even a billing record, to demonstrate that these discovery documents, specifically the Request for Admissions, were actually transmitted to Black for verification and return. No evidence is submitted by Defendants, despite the fact that the negligent submission of these documents was integral in the award of attorneys fees personally against Black. Even defense expert, Mr. Argue, could find no record of any such transmissions in the file provided to him by defense attorney, Mr. Langholz (Exhibit "E ", pp. 91-92). It is clear that, despite Black's indiscretion in signing off on a blank verification, Schwartz negligently placed Black in yet another compromising position by failing to provide him with the information and documentation for which he was providing the verification.

Also pivotal in this regard is the testimony of defense expert, Mr. Argue. Mr. Argue, was asked to assume that the responses to the Requests for Admissions (Deft. Exhibit "F") were prepared by Schwartz, but never reviewed with Black. Mr. Argue was further asked to assume

that Black was merely sent a blank verification page by Schwartz requesting he sign and return that verification. Armed with these assumptions, which are in complete conformity with Black's Declaration and testimony, Mr. Argue testified that it was a departure for Schwartz to prepare the response to the request for admission, not to review it with Black, and then to furnish Black with a blank verification to sign and return (Exhibit "C", pp 89-91).

Further, Mr. Argue testified that if, in fact, Schwartz failed to discuss those responses to the Request for Admissions, it would be an ethical violation (Exhibit "C", p. 92). Noteworthy is the fact that the Responses to the Request for Admissions and Response to LAFG's Demand for Interrogatories, both of which were dated and signed by Schwartz on October 16, 2006, contain verifications which are signed by Black, but not dated (Deft. Exhibit "F"). This is further evidence of the fact that the verifications were not prepared or provided to Black concurrent with, or at all, with the responses.

In the Matter of Drociak v. State Bar of California, 52 Cal.3d 1085, 278 Cal.Rptr. 86 (1991), the Supreme Court held that the use of a client's presigned verification in discovery proceedings, without first consulting with the client to assure the veracity of the assertions, warranted a one-year suspension from the practice of law. The hearing panel found a pattern of misconduct, as Petitioner had other client's sign blank verifications, and, further, that the use of such presigned and blank verifications posed a threat to the administration of justice. Specifically, unverified information in discovery responses might be inaccurate and relied upon by the opposing party to their detriment.

The Drociak Court further cited the case of Deyo v. Kilbourne, (1978) 84 Cal.App.3d 771, 779-783, 149 Cal.Rptr. 499, which explained how properly verified responses enable opposing counsel to properly assess the merits of a claim or defense and also serve an important

13

role in the efficient resolution of disputes.  In contrast, the use of presigned verifications in discovery proceedings, without first consulting with the client to assure than any assertions of fact are true, was found to be a clear and serious violation of the statutes and rules.

In the case at bar, the improper use of blank verifications by Schwartz was to inure to the detriment of Black himself.  It was the blank verification which Schwartz caused Black to sign, and which Schwartz attached to the Request for Admissions, which was to become the fundamental basis for the award of attorneys' fees personally against Black.  This occurred despite the fact that the false and misleading information contained within the admissions response was prepared by Schwartz himself and were never transmitted to Black to review or to acknowledge the accuracy of said admissions.

## E.   DEFENDANTS FAILED TO VOLUNTARILY DISMISS THE ACTION AGAINST LAFG WHEN PRESENTED WITH FACTS THAT THE ACTION LACKED MERIT.

Returning to the negligently commenced action against LAFG, and quite close in proximity to the time that Schwartz negligently prepared the Request for Admissions, Schwartz was presented with the opportunity to voluntarily dismiss the action, prior to LAFG moving for summary judgment.  This opportunity presented itself within the October 19, 2006 correspondence of Garrett & Tully, counsel for LAFG (Exhibit "D"), which essentially detailed the reasons why LAFG had no liability and was not a proper party to this lawsuit, and why the claims were baseless and being frivolously pursued. Most significant in this regard is that had the action been voluntarily dismissed prior to LAFG moving for summary judgment, the stipulation of dismissal could have included language  to the effect that said dismissal is without interests, costs or attorneys' fees to either side.

14

Black's Declaration revealed that Schwartz never did discuss this correspondence or this issue with Black (Exhibit "B"). Defense expert, Mr. Argue, testified that Schwartz should have discussed that letter with Black and that there was no correspondence to memorialize that he had (Exhibit "C", p. 120). In addition, when LAFG moved for summary judgment, Schwartz had a further opportunity to consult with Black, discontinue the claims, and prevent the summary judgment motion from being decided, thus keeping open the door open to a potential claim against Black for LAFG's legal fees. Rather, after the motion was decided in LAFG's favor, Schwartz chose to multiply proceedings and make a motion to renew and reargue, despite the fact that there was no basis for such a motion (Exhibit "C", p. 128).

When Plaintiff's expert, Mr. Gordon, was asked about his opinions as to the departures with respect to having LAFG in the case, he testified that LAFG was not the proper party to the action and, further, when this was made clear to Schwartz, he did not appropriately withdraw the claim (Deft. Exhibit "M", pp. 80-81).

This negligence was yet another cumulative factor in the award of attorneys' fees against Black. As noted by Otero in his decision awarding attorneys fees, Black continued to act in bad faith after summary judgment was entered in LAFG's favor.  Black served a Motion to Reconsider, then attempted to file the motion twice, both of which filings were improper and rejected.  Thereafter, Black failed to notify LAFG of the rejected motion, thus causing LAFG to spend almost four thousand dollars preparing an opposition (Deft. Exhibit "K", p.8).

**F.      DEFENDANTS FAILED TO NOTIFY BLACK OF THE FILING OF THE MOTION FOR ATTORNEYS FEES AGAINST BLACK AND SCHWARTZ AND OF THE INHERENT CONFLICT OF INTEREST**

It is further Plaintiff's claim that once LAFG made their motion for attorneys' fees in February of 2007, Defendants had the obligation to advise Black of the existence of such motion,

which exposed not just Schwartz, but also Black, to the imposition of attorneys' fees against him pursuant to the Federal Rule of Civil Procedure 37 (c), Chambers v. NASCO, and 28 USCA §1927.   Otero concluded in his March 2007 decision (Deft. Exhibit "K", p.8) that LAFG's attorneys fees were incurred in response to Black's failure to admit the truth of a matter requested under Fed. R. Civ. P. 36, without good cause for the failure to admit.  Otero further determined that had LAFG obtained the necessary admission, the case could have been disposed of with a simple motion requiring little time to draft.

Accordingly, the rationale for Otero's decision revolved directly around the improper admissions that were served by Defendants (Deft. Exhibit "F"), without Black's knowledge (Exhibit "B").  It is clear that once this motion was served, there existed an inherent unresolvable conflict of interest between Schwartz and Black.  Schwartz' interests were no longer united with Black.  Further, had Black been afforded the opportunity to retain other counsel to represent him in this motion, he could have put in sufficient arguments for the Court to award the fees only against Schwartz (Deft. Exhibit "M ", Gordon deposition, p. 113).

Black's Declaration states that he was never advised of the existence of such a motion until after the Court awarded the attorneys fees against him (Exhibit "B").  Consequently, he was never given the opportunity to retain counsel to represent his independent interests.  Pursuant to the testimony of Mr. Gordon, it was negligent for Schwartz to fail to notify Black of this motion and to act as if they were united in interest (Deft. Exhibit "M", p. 117).  It certainly would have been adverse  to Schwartz' own interests if he notified the court that he had his client sign a blank verification and attached that verification to a response to request for admissions.  This would be adverse to Schwartz, in particular by virtue of the fact that he prepared the false and misleading responses.  This left Black without representation to protect his interests..

16

Mr. Gordon's opinion is supported by the California Rules of Professional Conduct, Chapter 1. Professional Integrity in General, Rule3-310 (Avoiding the Representation of Adverse Interests), Section (B)(4) states, in pertinent part, as follows:

> "A member shall not accept or continue representation of a client without providing written disclosure to the client where the member has or had a legal, business, financial, or professional interest in the subject matter of the representation."

In the case at bar, Schwartz' continued representation of Black in opposing the motion for attorneys' fees, when his own interests had become antithetical to those of Black, constituted negligence (Deft. Exhibit "M", p. 117).

## G.    THE SPIRALING DISCOVERY ABUSES

While Otero may have assessed the sanctions personally against Black for his initial improper verification of the admissions, there exists a multitude of examples of discovery abuses and professional negligence which can only be attributed to the legal tactics of Schwartz himself, as Black's attorney.   In fact, as has been demonstrated above, it was the negligent commencement of the lawsuit against LAFG, a decision made by Schwartz himself, which was the catalyst for the myriad spiraling discovery abuses that were to follow.

In the court's March 2007 decision granting LAFG's attorneys' fees (Deft. Exhibit "K"), it describes several factors attributable to the attorneys' fees award that are indisputably conduct that could have only been orchestrated by Schwartz.    For instance, the court states, "Fundamentally, it appears that the suit was filed in the absence of any substantive investigation of the claim against LAFG" (Deft. Exhibit "K", p. 3).

Further, Schwartz named an incorrect party to the suit (Deft. Exhibit "K", p. 3).   The court stated, "This suggests that the lawsuit was filed without even reading the documents underlying the transaction," (Deft. Exhibit "K", p. 3).   The court further provides that "Black ought to have

17

considered carefully whether LAFG was a proper party to sue under this agreement.  Thus, the

case was recklessly filed," (Deft. Exhibit "K", p. 5).

The court also opined on the quality of Schwartz's legal work:

> "First, there is the quality of the briefs. The briefs were very short, lacked discussions of key legal issues, and were generally substandard. Reading the briefs gave the Court the impression that the briefs were intended not to resolve litigation disputes, but to prolong litigation and drive up the Defendants' litigation costs. Black's briefs were, to put it charitably, economically written. The result is that the Defendants, including LAFG, had to spend substantially more time responding to the briefs than Black spent writing the briefs. Additionally, Black filed three motions which at least bordered on being frivolous: the motion filed May 30,2006 seeking to set aside the Order enforcing arbitration, despite the presence of a signed arbitration agreement; the motion filed September 20,2006 seeking to dismiss its own case and enforce arbitration against LAFG, despite the fact that LAFG is not a party to the arbitration agreement; and the motion filed January 24, 2007 to reconsider the summary judgment motion, which did not purport to overcome all of the independent bases this Court found for granting judgment in favor of LAFG or comply with Local Rule 7-18. It could be inferred that Black intended to drive up the Defendants' litigation costs, so that settling on terms favorable to Black would become more attractive than litigating.  Second, Black has commented in its briefs that while it may not have a meritorious suit, it would still like to "present all the evidence to the jury." (Mot. filed Jan. 24, 2007, at 9.) The implication is that Black was hoping for a favorable jury verdict even if unsupported by the merits.." (Deft. Exhibit "K", p. 7)".

The court also states that:

> "Fourth, Black has continued to act in bad faith after summary judgment was entered in LAFG's favor. Black served its Motion to Reconsider, then attempted to file the motion twice, on January 11, 2007, and on January 19, 2007. Both of these filing attempts were improper and were rejected. However, Black failed to notify LAFG that the motion was rejected, as required by the notice of discrepancy. Therefore, LAFG spent almost four thousand dollars preparing an opposition and filing it on January 22, 2007. (Reply at 6.) The motion itself was finally filed properly on January 24, 2007. Although the motion was summarily denied for falling to comply with Local Rule 7-18 and for other reasons, LAFG had already prepared and filed its opposition," (Deft. Exhibit "K", page 8).

Although the court awarded attorneys fees under Rule 37(c), it also found that Black's

award of attorneys' fees also stemmed from the cumulative conduct in the action, for which

Schwartz could only have been responsible.  Specifically, the court stated,

"The Court finds that this frivolous lawsuit was recklessly brought, constituting a finding of "bad faith" litigation under 28 U.S.C. § 1927 and <u>Chambers v. NASCO</u>. Under this finding, the full amount of attorney fees sought by LAFG, $110,502, is to be paid by Black. The bad faith continued after the suit was filed, in an apparent attempt to browbeat LAFG into a settlement favorable to Black. Even if not all of Black's litigation tactics are sanctionable when considered individually, the Court's finding of bad faith is based on "the cumulative effect of [Black's] conduct." Salstrom v. Citycorp Credit Servs., Inc., 74 F.3d 183,185 (9th Cir. 1996)" (See Deft. Exhibit "K" at page 8)

None of these discovery abuses referenced by Judge Otero were conducted by Mr. Black, but rather were by his counsel on the matter, Schwartz. The fact that such improper filings and discovery abuses could only be attributed to Schwartz is borne out by the testimony of defense expert. Mr. Argue conceded in his testimony that the decision to make a motion in a particular case would be the decision of the attorney, not the client. (Exhibit "C", p. 148).

## IV.   ATTORNEY'S FEES ARE RECOVERABLE

Defendants' argument that Black is not entitled to attorney's fees assessed personally against him as an element of damages in the legal malpractice case at bar is a clear misinterpretation and misunderstanding of the applicable law.   Schwartz incorrectly relies on <u>Jocer Enterprises v. Price, Ropers, Majeski & Brently</u>, 183 Cal App 4th 559, 107 Cal Rptr 3d 539 (2010) to support his claim that attorney's fees, imposed by the Court on a client, individually, are not recoverable under California law based upon the facts herein.

<u>Jocer</u> is distinguishable because that case involved an award of attorney's fees against a party based on a law, namely the Anti-Strategic Law against Public Participation ("SLAPP"). This statute was designed to curtail the filing of strategic lawsuits against public participation. Under the Anti-SLAPP law (§425.16), subd. (c)(1), awards are authorized against a party pursuant to §128.5 of the statute when an anti-SLAPP motion "is frivolous or is solely intended to cause unnecessary delay."

In fact, the court states:

"The duty imposed under the anti-SLAPP law and section 128.5 is not akin to tort-related duties, whose breach by joint tortfeasors may be adjudicated in separate actions involving the tortfeasors, taken individually. As the court explained in <u>Wright v. Ripley</u> (1998) 65 Cal.App.4th 1189, 1195, 77 Cal.Rptr.2d 334, section 128.5 does not create a new tort: '[S]ection 128.5 was not intended to replace suits for malicious prosecution. It serves a different purpose.'" <u>Id.</u> at 575.

Hence, it is respectfully submitted that the <u>Jocer</u> court, in a most limited holding, stands for the proposition that a sanction award against a part. i.e., attorneys' fees, cannot form the basis of an indemnification claim by the aggrieved party against his former attorney when the sanction is statutorily mandated, based on frivolous motion practice to delay the prosecution of a malicious prosecution action. Here Black is suing his former attorney for legal malpractice, which has directly led to damages to Black in excess of $110,000. The <u>Jocer</u> court clearly and unambiguously states that the award of attorney's fees against the party was statutory based and not based upon a breach of a tort related duty, which is exactly the claim herein; specifically, negligence (legal malpractice) by Schwartz in his representation of Plaintiff in the litigation against LAFG, i.e., breach of a tort related duty.

Schwartz is clearly not entitled to avail himself of the limited and distinguishable holding of <u>Jocer</u>. In the case at bar, attorneys' fees awarded against Black were not as a result of frivolous motion practice in a malicious prosecution lawsuit, but rather it is claimed it was a direct result of legal malpractice by Schwartz in his representation of Black, a tort action. Accordingly, <u>Jocer</u> does not shield or protect Schwartz from indemnification for the attorneys' fees awarded against Black as his former attorney. It is respectfully submitted that the <u>Jocer</u> holding is expressly limited to a malicious prosecution action in which frivolous motion practice is undertaken by the opponent to the malicious prosecution action in which attorneys' fees are statutorily based.

20

## V.     PROXIMATE CAUSE EXISTS

To show damages proximately caused by a breach of an attorney's duty to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise, as required to state a cause of action for legal malpractice, the Plaintiff must allege facts establishing that, but for the alleged malpractice, it is more likely than not, the Plaintiff would have obtained a more favorable result. Charnay v. Cobert (2006) 145 Cal.App.4th 170, 179, 51 Cal.Rptr.3d 471. Moreover, in cases involving legal malpractice during litigation involving a party, actual injury may occur when an unfavorable judgment is first entered against the party, even though the party appeals from the judgment. Laird v. Blacker (1992) 2 Cal.4th 606, 611, 7 Cal.Rptr.2d 550, 828 P.2d 691.

On a legal malpractice claim, causation is ordinarily a question of fact which cannot be resolved by summary judgment; issue of causation may be decided as a question of law only if, under undisputed facts, there is no room for reasonable difference of opinion. Kurinij v. Hann & Morton, 55 Cal.App.4th 853, 64 Cl.Rptr.2d 324 (1997); Slovensky v. Friedman, 142 Cal.App.4th 151849 Cal.Rptr.3d 60.  On an attorney malpractice claim, the question about what would have happened had the lawyer acted otherwise is one of fact, unless reasonable minds could not differ as to the legal effect of the evidence presented.  Kurinji  and Slovensky, *supra*.

Defendant argues that the proximate cause of the imposition of attorneys ' fees, in accordance with Otero's March 2007 decision, was the act of Black verifying admissions, which contained denials which were later deemed to be true.  However, Black was never presented with the request for admissions, or given the opportunity to receive, review, or even discuss the responses (Exhibit "B", Black Declaration).   Such conduct, in having clients sign blank verifications, not only posits the client in a compromising situation, as in the case at bar, but was

21

also held to be a threat to the administration of justice, warranting a one-year suspension from the practice of law. Drociak, *supra*. Moreover, the use of presigned verifications in discovery proceedings, without first consulting with the client to assure than any assertions of fact are true, was found to be a clear and serious violation of the statutes and rules. Deyo, *supra*.

Unfortunately, Otero did not consider the facts surrounding the improper and false verifications as noted above. This was because Schwartz never afforded Black the opportunity to obtain independent counsel to represent him in the motion for attorneys' fees, and indemnify him from Schwartz' own negligent acts, once his and Schwartz interests were no longer united, as required by the California Rules of Professional Conduct, Chapter 1. Professional Integrity in General, Rule3-310 (Avoiding the Representation of Adverse Interests), Section (B)(4).

Certainly, Schwartz did not advise the Court, in his opposition papers to that motion for attorneys' fees, of the egregiously improper procedure he had followed to get those admissions verified by Black (Exhibit "B", Black Declaration). Otero decided by the letter of the law, and pursuant to FRCP 36, that Black was personally responsible for verifying such responses. Black Schwartz should not benefit by such improper tactics, which are not only a threat to the administration of justice , but also the basis for attorney suspension, and a clear violation of statutes and rules.

Additionally, Defendants' reliance on those portions of Lombardo v. Huysentruyt, 91 CalApp4th 656, 110 CalRptr2d 691 (2001), which suggest that in order to prove causation, a trial within a trial would be required to establish that but for the attorneys' negligence, the client would have prevailed in the underlying action against LAFG, is misplaced. Plaintiff is not attempting to show that he would have been successful in the underlying action. In fact, it

would be impossible to do so by virtue of the fact that Defendants negligently commenced the action against the wrong party.

The Court in <u>California State Automobile Association inter-Insurance Bureau, v. Parichan</u>, 84 Cal. App.4[th] 702, 101 Cal.Rptr.2d 72, has held that such a "case within a case " methodology for establishing causation and damages does not always apply to every circumstance. The Court explained:

> "while the case-within-the case method is the method of proof that is frequently, if not generally, required in legal malpractices cases, the reason that it is [is] because those are cases in which the claim is that the lawyer mishandled the underlying case, for example, let the state of limitations run or didn't handle the case appropriately at trial. The issue in this case, as the court sees it, is not how the underlying case would have come out but rather was CSAA reasonable in entering into the settlement in the facts and circumstances on this particular case".

As in the case at bar, the "case within a case" methodology could not possibly apply, because the underlying action was wrongly commenced.   Rather, Plaintiff would have to demonstrate whether or not Defendants acted reasonably in engaging in the aforementioned departures and discovery abuses which ultimately contributed to the damages herein.

It is clear that the damages sustained in the instant action, i.e., the attorneys' fees personally assessed against Black, would not have arisen but for the actions of Schwartz.  As Black's attorney acting responsibly, the Defendant should have advised Plaintiff to arbitrate the claims against PDW in Nevada, and not to litigate against LAFG in California, and ultimately to discontinue the action against LAFG early on in the case.  Instead Schwartz persisted negligently with the action against LAFG that was deemed frivolous and reckless by the court, especially in light of his failure to conduct discovery on the matter. Schwartz's reckless actions here, as well as those noted above, were unequivocally a proximate cause of the attorney' fees assessed

23

against Plaintiff, despite the analysis of the course of events and ultimate decision of Judge Otero in the underlying litigation.

## VII.    CONCLUSION

In conclusion, the negligent commencement of the frivolous action recklessly brought against LAFG; failure to conduct discovery; failure to notify Plaintiff of and produce him for deposition; failure to serve proper responses to requests for admissions; submission of false admissions, which were later deemed to be true; failure to discuss or provide Black with the requests and responses to admissions before having him sign blank verifications; failure to discuss discontinuing the action with Black; failure to discontinue the LAFG action; the documented recklessness and discovery abuses, combined with the fact that Schwartz never afforded Black the opportunity to retain independent counsel to represent him in the motion for attorneys' fees,   were the proximate cause of the damages in the within action, i. e, the imposition of attorneys fees against Black personally.

Based on the circumstances set forth above, it is respectfully submitted that the Court should deny the Defendants' motion in its entirety.

Dated:  Cold Spring Harbor, New York
           November 14, 2011

                                      Respectfully submitted,
                                      Baron & Pagliughi, PLLC

                         BY:    _____
                                      Peter D. Baron, Esq. (PDB8519)
                                      Attorneys for Plaintiff
                                      85 Main Street
                                      Cold Spring Harbor, NY 11724

To:    MORGAN MELHUISH ABRUTYN
         Attorneys for Defendants
         39 Broadway, 17th Floor
         New York, New York 10006
         (212) 809-1111

24

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2011, a true and correct copy of the foregoing

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS JEFFREY**

**SCHWARTZ' AND LAW OFFICE OF JEFFREY S. SCHWARTZ' MOTION FOR**

**SUMMARY JUDGMENT AND SUPPORTING DOCUMENTS** were served on the

following via ECF to:

Douglas S. Langholz (DL9800)
MORGAN MELHUISH ABRUTYN
Attorneys for Defendants
39 Broadway, 17th Floor
New York, New York  10006


COURTESY COPY VIA REGULAR MAIL:

Honorable Judge Joanna Seybert
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
United States Federal Building
100 Federal Plaza
Central Islip, NY 11722


_____
Peter D. Baron, Esq. (PDB8519)

Case No.:  CV-09 2271

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PAUL BLACK,

*Plaintiff(s)*

-against-

JEFFREY S. SCHWARTZ and LAW OFFICE
OF JEFFREY S. SCHWARTZ,

*Defendant(s)*

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITIONTO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Baron & Pagliughi, PLLC
*Attorneys for Plaintiff*
*Office and Post Office Address, Telephone*
85 Main Street
Cold Spring Harbor, New York 11724
(631) 367-7000

To
        Attorney(s) for

Service of a copy of the within                                    is hereby admitted.

Dated:

                        Attorney(s) for    ...............................................................

Sirs:
        **PLEASE TAKE NOTICE**

☐        NOTICE OF ENTRY that the within is a (certified) true copy of a                  duly entered in the
        office of the Clerk of the within named court on

☐        NOTICE OF SETTLEMENT that an Order of which the within is a true copy of will be presented for settlement to
        the HON.                              , one of the judges of the within named court at
        on            at

Dated:

                                Yours, etc.,

                                Baron & Pagliughi, PLLC
To:                             *Attorneys for Plaintiff(s)*
                                *Office and Post Office Address, Telephone*
                                85 Main Street
                                Cold Spring Harbor, New York 11724
                                (631) 367-7000